UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
LOUCREATIA JONES,

                        Plaintiff,        **AMENDED COMPLAINT**

     - against -

CITY OF NEW YORK, NEW YORK CITY       **DOCKET NO.:**
DEPARTMENT OF CORRECTIONS ("DOC")  **07-CV-157**
WARDEN FRANK SQUILLANTE, DEPUTY
WARDEN "JOHN" EMANS, C.O. MARTIN
MASON, C.O. "JOHN" QUIONES,
WARDEN ROBERT SHAW sued in
their individual and professional
capacities,

                        Defendants.
--------------------------------------X

    The Plaintiff, LOUCREATIA JONES, by her attorneys, CRONIN & BYCZEK, LLP, as and for her Amended Complaint against the Defendants, respectfully sets forth:

**NATURE OF ACTION**

    1.   This is an action for damages and equitable relief under Title I of the Americans with Disabilities Act of 1990 as codified, ("ADA"), Rehabilitation Act of 1973, Civil Rights Act of 1991, 42 U.S.C. §1983, 42 U.S.C. §12101, et seq., Fourteenth Amendment §5 of the United States Constitution, Equal Protection Clause, 42 U.S.C. §12202 to correct unlawful employment practice on the basis of Plaintiff's disability and to make Plaintiff whole. Plaintiff also claims that she was retaliated against for her prior complaints to "DOC" supervisors and New York State Division of Human Rights. Defendants deprived Plaintiff of a

1

reasonable accommodation and altered the terms and conditions of her employment because of her disability.

2.   This is also an action for declaratory relief and pecuniary damages to secure protection of and to redress deprivation of rights secured by the United States Constitution.

## JURISDICTION

3.   This is an action for damages and equitable relief under Title I of the Americans with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973, 42 U.S.C. §1983, Fourteenth Amendment §5 of the United States Constitution and Equal Protection Clause and for retaliation against Plaintiff in violation of ADA, and 42 U.S.C. §12101 et seq.

4.   Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to §107(a) of the ADA, 42 U.S.C. §12117(a), pursuant to §102 of the Civil Rights Act of 1991, 42 U.S.C. §1983, New York State Executive Law §296 and New York City Human Rights Law, N.Y. C. Admin. Code § 8-107

5.   The rights, privileges, and immunities sought herein to be redressed are also secured by the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution.

6.   Venue is proper within this District, as the acts complained of were and are being committed within its boundaries.

PREREQUISITES FOR ADA
DISCRIMINATION AND SUBSEQUENT RETALIATION

7.   On or about December 14, 2005, Plaintiff filed a Complaint of employment discrimination with New York State Division of Human Rights, and the United States Equal Employment Opportunity Commission ("EEOC").

8.   Said Complaint charged employment discrimination and retaliation against Plaintiff by Defendants because of Plaintiff's disability and the State's retaliation against her in violation of ADA, hostile work environment and retaliation for prior complaints against Defendants.

9.   Subsequent to Plaintiff's filing of the charge, Plaintiff received a Right to Sue letter on November 15, 2006. Said letter advised Plaintiff that she has the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA).

10.   This lawsuit was commenced on or about January 9, 2007, well within ninety (90) days of receipt of said notice.

PARTIES

11.   Plaintiff JONES, is a resident of City, County and State of New York, is over twenty one (21) years of age, and is a citizen of the United States.

12.   Plaintiff has sustained severe back and knee injuries as a result of an on duty injury; diagnosed with Prolapsed Uterus, urinary incontinence and urinary dysfunction causing her to have

to utilize the bathroom on a continuous basis.

13. Plaintiff is employed by "DOC" at Riker's Island Correctional Facility located in Queens, New York, and has been so employed with "DOC" since December 10, 1987.

14. At all times herein, the City of New York, acting through the New York City Department of Corrections ("DOC"), was responsible for the policy, practice, supervision, implementation, and conduct of all "DOC" matters and was responsible for the appointment, training, supervision, and conduct of all DOC personnel. In addition, at all relevant times, the City of New York was responsible for enforcing the rules, statutes, codes and directives of the DOC, and for ensuring that DOC personnel obey the laws of the United States and the City and State of New York.

15. At all times material herein, DOC employed the Defendant WARDEN FRANK SQUILLANTE ("SQUILLANTE"), who was a warden at Riker's Island Correctional Facility. SQUILLANTE was Plaintiff's supervisor and a policy maker for DOC.

16. Defendant, "JOHN" EMANS ("EMANS"), was at all relevant times an employee of "DOC" and a Deputy Warden and supervisor of the plaintiff at Riker's Island Correctional Facility. He was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's prior opposition and complaints of harassment and retaliation within Riker's Island C.F. and complaints to other supervisors and policy makers within Riker's Island C.F. regarding her reasonable accommodation and condoning retaliatory conduct against Plaintiff. EMANS is being sued in his individual and official capacity.

17.   Defendant, MARTIN MASON ("MASON"), was at all relevant times an employee of "DOC" and a correction officer at Riker's Island Correctional Facility.   He was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's prior opposition and complaints of harassment and retaliation within Riker's Island C.F. and complaints to other supervisors and policy makers within Riker's Island C.F. regarding her reasonable accommodation and condoning retaliatory conduct against Plaintiff.   MASON is being sued in his individual and official capacity.

18.   Defendant, C.O. "JOHN" QUIONES ("QUIONES"), was at all relevant times an employee of "DOC" and a correction officer at Riker's Island Correctional Facility.   He was involved in the harassment and retaliation of the Plaintiff as a result of Plaintiff's prior opposition and complaints of harassment and retaliation within Riker's Island C.F. and complaints to other supervisors and policy makers within Riker's Island C.F. regarding her reasonable accommodation and condoning retaliatory conduct against Plaintiff.   QUIONES is being sued in his individual and official capacity.

19.   At all times alleged herein and in their actions described herein, the Defendants were acting under color of law and under color of their authority as supervisors and policy makers at Riker's Island Correctional Facility and the City and State of New York.

5

## BACKGROUND

20.  Plaintiff has been employed by DOC as a Correction Officer since her date of appointment on December 10, 1987.

21.  Plaintiff has been assigned, at all relevant times, to the Riker's Island Correctional Facility located in Queens, New York.

22.  Plaintiff was diagnosed with a Prolapsed uterus requiring her to be near and have use of a bathroom in 1996; and sustained injuries to her back and both knees as a result of a work related injury in 2002.

23.  On December 2, 2000 Plaintiff sustained work related injuries while she was a passenger in a DOC vehicle which was being driven negligently by another DOC employee causing her to fall and sustain injuries to her neck, lower back and both knees.

24.  Plaintiff worked the midnight tour from 1996 through 2003 at the Control Post which was equipped with a bathroom on the post, while suffering from a prolapsed uterus, while never needing to request an accommodation for access to a bathroom during the performance of the essential functions of her duties as a correction officer.

25.  In 2004, Plaintiff was placed on Medically Monitored Return status by DOC.  Said placement is a preceding step towards termination due to Plaintiff's disabilities.

26.  Plaintiff informed DOC on numerous occasions that she can perform all of the essential functions of her job, as long as she has reasonable accommodation by being placed at a post in a reasonable vicinity of a bathroom.

27.  If an employee of DOC remains on Medically Monitored

Return status for a period of approximately six months, said individual will be terminated from his or her employment.

28. On July 25, 2005, Warden David Goodman of Health Management Division, told the Plaintiff that she had to file for disability retirement from DOC due to her disability because she had not worked full duty for 6 months or more.

29. On July 11, 2005, Plaintiff applied for reasonable accommodation with the EEO and her command at George Invierno Center ("GRVC").

30. On August 19, 2005, Plaintiff received a correspondence from Luis Burgos, Jr., Deputy Commissioner for EEO/DOC, denying Plaintiff a reasonable accommodation despite the fact that an accommodation was recommended by DOC medical staff and said accommodation would not have been a detriment to DOC.

31. On August 31, 2005, Plaintiff was returned to full duty status by DOC's GYN specialist, Dr. Lesa Rosenberg.

32. On August 31, 2005, Plaintiff resubmitted a second request for a reasonable accommodation to EEO/DOC while still being in compliance with DOC policy Directive 2232R and Operation Order 8/87.

33. On September 21, 2005, Plaintiff again submitted another request for a reasonable accommodation with medical documents via facsimile to EEO/DOC.

34. Despite working on Full Duty Status, on October 25, 2005 Plaintiff was forced to go on MMR III status by Vivian Tollin, Director of Health Management and Dr. Lesa Rosenberg. Being placed on MMR III status was not an accommodation but rather a retaliatory

7

conduct on the part of DOC to force Plaintiff to retire.

35. DOC has continuously ignored Plaintiff's repeated requests for a reasonable accommodation.

36. On December 14, 2005, Plaintiff filed a verified complaint with the New York State Division of Human Rights, case no. 10109251 and with the Equal Employment Opportunity Commission, charge no. 16GA600991, charging the City of New York and DOC with unlawful discriminatory practice relating to her employment because of her disability.

37. On September 26, 2006, Plaintiff was assaulted by Defendant C.O. Mason, Shield No. 6982, while at the Gym Control Post. C.O. Mason began to verbally abuse the Plaintiff by calling her names and profanity. He then told the Plaintiff that she was "an ignorant bitch and you're off this post."

38. Plaintiff began to write entries in the Gym Control Log Book in order to document the abusive conduct of C.O. Mason, at which time C.O. Mason snatched the book away from the Plaintiff and then proceeded to rip the telephone cable from the wall and throw the telephone across the room. He then stated to the Plaintiff, "Why are you writing in that fucking log book, you ignorant bitch." Mason continued to rant and rave "You're off this post, ignorant bitch!"

39. As a result of Mason's assaultive behavior, Plaintiff retreated into the Central Control Room, where she remained until after roll call was completed. When roll call was completed, Plaintiff attempted to return to the Gym Control Post in order to retrieve her belongings, but Mason refused to let her enter.

40.  Plaintiff subsequently told Defendant Assistant Deputy Warden Emans that she wanted to talk to him in order to complaint about the harassing and assaultive conduct of C.O. Mason.   Emans refused to accept her complaint against Mason and told Plaintiff that he was not the Tour Commander.

41.  Plaintiff then proceeded to complain to Warden FRANK Squillante of the hostile conduct of Mason.   After speaking to the Warden, Plaintiff immediately sought medical attention due to the emotional distress and duress caused by Mason and the lack of support received from Plaintiff's supervisors.

42.  Upon information and belief, C.O. Mason has never been disciplined by "DOC".

43.  On or about September 28, 2006, as a result of Plaintiff's complaints against C.O. Mason, defendants retaliated by removing Plaintiff from her Gym Control Post and transferred her to Special Operations Division.   Plaintiff remained at the Special Operations Division until December 17, 2006.

44.  As a result of an on duty injury, Plaintiff was out sick from December 17, 2006 until April 7, 2007.   During that time, she was assigned to the Health Management Division.

45.  On April 3, 2007, Plaintiff was advised that she would be returning to work and being transferred back to her parent command (GRVC) the same location where she was assaulted by C.O. Mason.   C.O. Mason was still working at that same post.

46.  Plaintiff immediately notified her supervisor that she was being placed in an unsafe command due to the prior assault by another

**9**

correction officer who was still at that location (GRVC).

47. On April 5, 2007, Plaintiff contacted Chief Larry Davis of Support Service Division and told him that she was being transferred back to GRVC and needed assistance.  No assistance was ever giving nor did Chief Davis response to Plaintiff's request for help.

48. On April 7, 2007 Plaintiff was transferred back to parent command.

49. During June to October 2007, Plaintiff was assigned to the construction escort and the sally port intake exterior booth.  Said location did not have immediate access to a bathroom.

50. While assigned to the sally port booth – exterior, Plaintiff's coworkers constantly removed all State soap and toilet paper from the intake bathroom.  Said coworkers being aware of Plaintiff's disability and the need to have access to a bathroom, removed the toilet paper in order to harass and cause emotional and mental anguish to the Plaintiff.  Other correction officers began to spread harassing and malicious rumors that because Plaintiff would go to the bathroom more than the other correction officers and being that there was no toilet paper, Plaintiff "used her hands to wipe".

51. On several occasions during the months of September and October 2007, while Plaintiff was improperly stationed at the exterior gate of the sally port, without the requisite accommodations recommended by DOC, Plaintiff was purposely and maliciously denied entrance into the facility by other correction officers for the use of the bathroom.

52. As a result of the harassing and hostile environment at

**10**

DOC, Plaintiff suffered the loss of her bodily functions and soiled her garments.  As a result of said incidences, Plaintiff became humiliated, mortified and suffered extreme emotional distress.

53.  Despite Plaintiff's complaints to her superiors no discipline was ever taken against the correction officers by DOC.

54.  On August 16, 2007, Plaintiff received disciplinary charges and specifications relating to an incident which occurred on August 9, 2007 regarding the loss of a key.  Said key was discovered missing approximately seventeen hours after Plaintiff had relinquished the keys to another correction officer.

55.  The other correction officer who was in possession of the keys and didn't report any missing keys until approximately seventeen hours after he came into possession of same was never disciplined.

56.  As a result of the charges and specifications under CD Log No. 235/07, Plaintiff was offered a penalty to resolve the charges with the loss of only two vacation days.  Said penalty was accepted by the Plaintiff on or about September 10, 2007, while in the company of her union representative, and Deputy Warden Colon.

57.  On November 10, 2007, Plaintiff was assigned to the sally port mess hall booth outer compound during the 7:00 am to 3:31 pm. Hours.  Correction Officers Elder, Soto and Ellis purposely delayed Plaintiff's access to the use of the bathroom for approximately twenty minutes while ignoring Plaintiff's continuous requests to unlock the gates and allow her to enter so that she could use the bathroom.  Due to Plaintiff's disability and the DOC's employees malicious and intentional refusal to allow her to enter, Plaintiff

11

suffered the loss of her bodily functions and soiled her garments.

58. On November 10, 2007 Plaintiff complained to Assistant Deputy Warden Darante regarding the fact that she was being harassed and retaliated against by DOC for having filed complaints with the EEO.

59. On November 16, 2007, Warden Shaw of GRVC held an open forum for the correction officers to offer suggestions, complaints, ideas, etc. At said forum, Plaintiff advised Warden Shaw that when an officer is on MMR I, II or III they should not be mistreated or assigned to demeaning tasks, as she was in her case.

60. On November 13, 2007, Plaintiff complained to her union representative C.O. Quiones about her mistreatment by him and others in referenced to their removal of Plaintiff's departmental equipment and causing her to be disciplined.

61. On November 16, 2007, SHAW rejected the previously agreed upon penalty between the Plaintiff and Deputy Warden Colon for the penalty of two days lost vacation entered into on September 10, 2007 and referred the matter to the office of Trials and Litigation for resolution.

62. On November 30, 2007, Plaintiff filed two separate complaints with EEO. The first was in regards to the November 10, 2007 incident while at the sally port mess hall booth, and the second concerned her treatment by her coworkers in regards to the taking of soap and toilet paper and spreading of malicious rumors in regards to her hygiene and refusal to give Plaintiff access to a bathroom.

63. No disciplinary action was ever taken against the

correction officers involved in the November 10, 2007 incident nor the toilet papers incidences by DOC.

64. On April 22, 2008, Plaintiff was examined by a DOC physician who continued Plaintiff on MMR III status but wrote in her report that Plaintiff should avoid strenuous activity and needs access to bathroom.

65. Said accommodation was never giving to the Plaintiff by EEO/DOC.

66. On January 3, 2008, Plaintiff was interviewed by EEO for approximately one hour in regards to her numerous complaints regarding discrimination and retaliation.

67. As a result of the hostile work environment in which Plaintiff was forced to endure, on January 28, 2008 Plaintiff submitted her notice of intent to vest out and resign with only approximately six months remaining before she could retire with full benefits.

68. On February 6, 2008, Plaintiff renegotiated her penalty in regards to the charges and specifications under Operations Complaint No. 497/07. Plaintiff accepted four-vacation day penalty from the DOC advocate.

69. On April 7, 2008, Plaintiff was informed that DOC Commissioner O'Leary refused to accept the agreed upon penalty of the loss of four vacation days.

70. On April 30, 2008, Plaintiff appeared for a conference hearing at the Office of Trials and Litigation and was informed by the DOC advocate that Commissioner O'Leary was unwilling to negotiate

13

any plea and wanted Plaintiff to go to trial at an OATH Hearing.   As of the present time, said hearing has not been held.

71.   Plaintiff is currently on MMR III, without a reasonable accommodation and continues to be harassed and subjected to a hostile work environment by DOC personnel.

## AS AND FOR A FIRST CAUSE OF ACTION UNDER THE AMERICANS WITH DISABILITIES ACT AGAINST THE CITY OF NEW YORK AND DEPARTMENT OF CORRECTIONS

72.   The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "71" with the same force and effect as if fully set forth herein.

73.   At all relevant times, Plaintiff has been an individual with a disability within the Americans with Disabilities Act, 42 U.S.C. §12102(2).   More particularly, Plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of such an impairment, and/or is regarded by Defendants as having such an impairment.

74.   Plaintiff is a qualified individual with a disability as that term is defined in §101(8) of the ADA, 42 U.S.C. §12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job.

75.   Defendants are and were Plaintiff's employer and supervisors and are covered by the terms of the ADA.

76.   Defendants have refused to make a reasonable accommodation to Plaintiff and/or have refused to offer the same accommodations

14

that they have offered to other similarly situated correction officers.

77. Defendants have altered the terms and conditions of Plaintiff's employment because of her disability, to include unlawful and inappropriate disciplinary action.

78. Defendants failure to make reasonable accommodations to Plaintiff's physical disability and their disparate treatment of the Plaintiff constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment. Defendants' actions constitute a violation of Sections 102(b)(5)(A) of the ADA, 42 U.S.C. §12112(b)(5)(A).

79. Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

80. As a direct and proximate result of Defendants' discrimination on the basis of disability or perceived disability, Plaintiff has suffered lost wages and benefits.

81. Defendants' failure to make a reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

82. As a consequence of Defendants' unlawful employment practices, Plaintiff is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with interest.

83.  Individual Defendants' violation of the ADA was willful, and Plaintiff is entitled to punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT AGAINST THE CITY OF NEW YORK AND DEPARTMENT OF CORRECTIONS

84.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "83" with the same force and effect as if fully set forth herein.

85.  Plaintiff was engaged in activity protected by the ADA wherein she filed complaints of discrimination due to her disability.

86.  Defendants were aware that Plaintiff had filed complaints with EEOC and New York State Division of Human Rights regarding discrimination under the ADA.

87.  As a result of Plaintiff's filing complaints of discrimination with the New York State Division of Human Rights and EEOC, adverse action was taken against the Plaintiff

88.  Plaintiff's complaints to the New York State Division of Human Rights and EEOC and the disciplinary actions taken against her are causally connected.

89.  As a consequence of Defendants unlawful employment practices, Plaintiff is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with interest.

16

90.   Individual Defendants' violation of the ADA was willful, and Plaintiff is entitled to punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

91.   The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "90" with the same force and effect as if fully set forth herein.

92.   Throughout the events recited herein, the individual Defendants, while acting under the color of law, subjected the Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, Freedom of Speech pursuant to the First and Fifth Amendments of the Constitution and Civil Rights as guaranteed under Article I, Section II, of the New York State Constitution.

93.   Plaintiff has been deprived of her Constitutional Rights to be free of discrimination and retaliation under the ADA based upon her disability and opposition to discrimination and workplace violations and has been damaged and suffered emotional distress, economic damages and conscious pain and suffering as a result of these actions.

94.   The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as hereinbefore stated, were willful and malicious acts.

17

95.  In addition to Plaintiff, Defendants have similarly violated the rights of other disabled officers, all as part of a deliberate policy and practice and a deliberate course of conduct.

96.  As a result of the aforesaid wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

97.  Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of ONE MILLION ($1,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO REHABILITATION ACT OF 1973 (29 U.S.C. §794) AGAINST THE CITY OF NEW YORK AND DEPARTMENT OF CORRECTIONS

98.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" with the same force and effect as if fully set forth herein.

99.  At all relevant times, Plaintiff has been an individual with a disability within §7(8) of the Rehabilitation Act of 1973, 29 U.S.C. §706(8).  More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such an impairment, and/or is regarded by Defendants as having such an impairment.

100. Plaintiff is a qualified individual with a disability as that term is defined in §7(8) of the Rehabilitation Act of 1973, 29 U.S.C. §706(8).  More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job.

18

101. Upon information and belief, Defendants are the recipients of federal financial funding.

102. Defendants have refused to make a reasonable accommodation to Plaintiff and/or have dispensed with the reasonable accommodation they had been providing.

103. Defendants have altered the terms and conditions of Plaintiff's employment because of her disability to include proffering invalid, inappropriate and unlawful disciplinary charges.

104. Defendants failure to make reasonable accommodations to Plaintiff's physical disability and their disparate treatment of the Plaintiff constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment. Defendants' actions constitute a violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

105. Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

106. As a direct and proximate result of Defendants discrimination on the basis of disability or perceived disability Plaintiff has suffered lost wages and benefits.

107. Defendants' failure to make a reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

108. As a consequence of Defendants' unlawful employment practices, Plaintiff is entitled to compensatory damages in the

19

amount of ONE MILLION ($1,000,000.00) DOLLARS together with
interest.

109. Defendants' violation of the ADA was willful, and
Plaintiff is entitled to punitive damages in the amount of ONE
MILLION ($1,000,000.00) DOLLARS.


## AS AND FOR A FIFTH CAUSE OF ACTION
## BASED ON HOSTILE WORK ENVIRONMENT

110. The Plaintiff repeats, reiterates and realleges each
and every allegation contained in paragraphs "1" to "109" with
the same force and effect as if fully set forth herein.

111. The Defendants intentionally and wrongfully
discriminated against the Plaintiff in her employment on the
account of her disability and retaliated by creating a hostile
work environment in violation of the Constitution of the United
States and applicable statutes.

112. Defendants knew or should have known that their
Defendant-employees have a propensity to act in a harassing and
discriminatory manner.

113. Defendants' harassments were severe and pervasive so as
to alter the conditions of Plaintiff's employment causing
Plaintiff to be unjustly disciplined.

114. As a result, the Defendants' actions created an abusive
working environment in that the Plaintiff was verbally harassed
in the presence of supervisors and fellow employees.

115. The Defendants' conduct caused irreparable damage to

the Plaintiff.

116. As a result of these negligent, wrongful, careless, reckless and intentional acts of the Defendants, Plaintiff suffered severe and extreme emotional distress and conscious pain and suffering.

117. As a result of the Defendants' conduct, the Plaintiff has been damaged in the amount of One Million ($1,000,000) Dollars.

## AS AND FOR A SIXTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 FOR FIRST AMENDMENT RETALIATION

118. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "117" with the same force and effect as if fully set forth herein.

119. Plaintiff has been unlawfully subjected to a hostile working environment and harassment in retaliation for exercising her First Amendment rights to free speech. The aforementioned conduct on the part of the Defendants was without cause or justification and violated Plaintiff's rights, privileges and immunities as guaranteed by the First Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York State Division of Human Rights Law.

120. The actions of the Defendants in depriving Plaintiff of her constitutional and civil rights were willful and malicious acts.

121. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered loss of benefits and privileges of her employment with

21

DOCS, damaged professionally and economically, suffered humiliation as well as physical and emotional pain and suffering.

122. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of Three Million ($3,000,000.00) Dollars and Punitive and Exemplary damages in the amount of Three Million ($3,000,000.00) Dollars.

## AS AND FOR A SEVENTH CAUSE OF ACTION PURSUANT TO THE NEW YORK STATE EXECUTIVE LAW §296

123. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "122" with the same force and effect as if fully set forth herein.

124. Based on the foregoing the defendants intentionally and willfully discriminated against the plaintiff in her employment on account of her disability in violation of New York State Executive Law § 296.

125. As a result of the defendants' action sand of the deprivations of Plaintiff's rights as guaranteed under New York State Executive Law §296, the Plaintiff has been damaged.

126. As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, the Plaintiff is seeking compensatory and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

## AS AND FOR AN EIGHTH CAUSE OF ACTION PURSUANT
## TO THE NEW YORK CITY HUMAN RIGHTS LAW

127. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "126" with the same force and effect as if fully set forth herein.

128. Based on the foregoing, the defendants intentionally and willfully discriminated against the plaintiff in her employment on account of her disability in violation of New York City Human Rights Law, N.Y.C. Admin. Code §8-107.

129. As a result of the defendants' actions and of the deprivations of Plaintiff's rights as guaranteed under New York City Human Rights Law, the Plaintiff has been damaged.

130. As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, the plaintiff is seeking compensatory and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

## JURY TRIAL

The Plaintiff, LOUCREATIA JONES, requests a jury trial on all questions of fact raised by the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

A.   For the First Cause of Action against Defendants in the

amount of Five Hundred Thousand ($500,000.00) Dollars; and punitive damages in the amount of Five Hundred Thousand ($500,000.00) Dollars;

B.   For the Second Cause of Action against Defendants in the amount of Five Hundred Thousand ($500,000.00) Dollars; and punitive damages in the amount of Five Hundred Thousand ($500,000.00) Dollars;

C.   For the Third Cause of Action against individual Defendants in the amount of One Million ($1,000,000.00) Dollars and Punitive damages in the amount of One Million ($1,000,000.00) Dollars;

D.   For the Fourth Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars and Punitive damages in the amount of One Million ($1,000,000.00) Dollars;

E.   For the Fifth Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars;

D.   For the Sixth Cause of Action against Defendants in the amount of Three Million ($3,000,000.00) Dollars and Punitive damages in the amount of Three Million ($3,000,000.00) Dollars;

E.   For the Seventh Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars in compensatory and punitive damages;

F.   For the Eighth Cause of Action against Defendants in the amount of One Million ($1,000,000.00) Dollars in compensatory and punitive damages;

24

G.   In all causes of action, reasonable attorneys fees, pre judgment interest, costs of this action and for such other relief as this Court may deem just and proper.


Dated:  Lake Success, New York
        June 13, 2008

                          CRONIN & BYCZEK, LLP

                          *Rocco G. Avallone*
                          _____
                          Rocco G. Avallone (RA8055)
                          1983 Marcus Avenue, Suite C-120
                          Lake Success, New York 11042
                          (516) 358-1700